UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHERYL RACHMIL-ETTER and<br>GREG ETTER<br>    Plaintiffs<br><br>v.<br><br>DANIEL C. SNYDER, M.D.<br>and<br>NEWTON-WELLESLEY ORTHOPEDIC<br>ASSOCIATES, INC.<br>    Defendant | CIVIL ACTION NO.:10- |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**PARTIES**

1. The Plaintiff, Sheryl Rachmil-Etter, resides at 29 Chapin Road, Barrington, Bristol County, Rhode Island.

2. The Plaintiff, Greg Etter, resides at 29 Chapin Road, Barrington, Bristol County, Rhode Island. Mr. Etter is the husband of the plaintiff Sheryl Rachmil-Etter.

3. Defendant Daniel Snyder, M.D. is a physician duly licensed to practice medicine in the Commonwealth of Massachusetts. At all times relevant hereto, said Defendant practiced Orthopedic Surgery with a place of business at Newton-Wellesley Orthopedic Associates, Inc, located at 2000 Washington Street, Newton, Middlesex County, Massachusetts.

4. Defendant Newton-Wellesley Orthopedic Associates, Inc is a medical corporation located at 2000 Washington Street, Newton, Middlesex County, Massachusetts. Daniel Snyder was

an employee, agent, or representative of Newton-Wellesley Orthopedic Associates, Inc at all times relevant to this complaint and Newton-Wellesley Orthopedic Associates has vicarious liability for the care and treatment provided by Dr. Snyder.

5. The United States District Court has jurisdiction in this matter because of diversity of parties (28 USC §1332).

6. The amount in controversy exceeds the amount necessary to satisfy the jurisdictional requirements of this Court.

## STATEMENT OF THE FACTS

7. Sheryl Rachmil-Etter, age 48, first saw Daniel C. Snyder, M.D. at Newton-Wellesley Orthopedic Associates, Inc. on April 19, 2007 at which time she complained that she was limited in her physical activities because of pain in her left hip. He noted that she had a congenital left hip dysplasia which had been treated with traction and bracing as a child.

> **Physical Exam**: On physical examination, she stands 5'8" and weighs 135 pounds and lists a left antalgic gait with slight left leg shortening of less than a centimeter. Her range of motion is markedly limited in her left hip, but she gets into 60 degrees of forward flexion before she falls into 20 degrees of external rotation, and she cannot

    get back to 10 degrees short of internal rotation.

    **X-ray/Radiographs**: Her x-rays show severe dysplastic left hip with superior migration of the left hip with complete loss of joint space superolaterally with uncovering of the superolateral aspect of the femoral head with sclerotic changes of her acetabulum and cyst in her acetabulum. Her femoral neck bony architecture remains quite healthy.

8. Dr. Snyder's plan was for hip resurfacing, stating that Ms. Rachmil-Etter was an "ideal candidate for a hip resurfacing based on her hip pathology, age, activity level and bone quality."

9. On August 7, 2007, Ms. Rachmil-Etter met with Paul O'Connell, PA-C, who reviewed the consent form with her for surgery.

10. On August 17, 2007, Dr. Snyder, with the assistance of Emily H Lafleur, PA, performed a left hip resurfacing on Ms. Rachmil-Etter. An x-ray taken in the recovery room postoperatively showed the hip to be dislocated. She was taken back into surgery immediately where Dr. Snyder found her hip to be very unstable and he noted that she had "a retroverted acetabulum on the non-operative side and the corrective placement on the left operative side left her very unstable." He changed the position of the cup "to match her natural retroverted acetabulum."

11. On January 22, 2008, Dr. Snyder reported that Ms. Rachmil-Etter was unhappy with her functional ability. He stated that if she is not pleased with her function or comfort, the only option would be to convert to a total hip replacement, "increasing the offset that she has, _____ [sic] anteversion..."

12. Ms. Rachmil-Etter continued to be "disappointed" on an office visit of July 8, 2008. Dr. Snyder stated that she had good pain relief and a "reasonable range of motion and strength," but was unable to return to her high level of activity. He stated that she had a very difficult situation, with marked anteversion of both hips and very little offset of both hips and suggested she work on range of motion exercises, proprioception exercises and pelvic stability. He interpreted x-rays that day as showing "excellent bone-prosthesis relationship." He states that "Unfortunately, it matches her pathologic low offset, high anteversion state and therefore she remains limited. Other than exercise he suggested no other intervention.

13. On May 5, 2008, Ms. Rachmil-Etter consulted Edwin P. Su, M.D. at the Hospital for Special Surgery in New York. Dr. Su reported that she complained of stiffness in her hip which becomes painful on activity. She is less active than before surgery because of stiffness in her hip, she feels that she is stressing other areas such as her sacroiliac joint for which she continues physical therapy and chiropractic care. She uses a cane, takes Advil regularly for pain and Valium for muscle spasms.

14. Her examination reveals an intoeing gait bilaterally. Her motion is limited to 95 degrees flexion, 20 degrees of

painful external rotation, 45 degrees internal rotation in the prone position, 30 degrees of abduction with pain past that, and 0 degrees of adduction.

15. Dr. Su reviewed x-rays and interprets them as showing the cup in a "very horizontal position", with "a little bit of uncoverage laterally because of this." Dr. Su found that the cup was quite medial with a decrease in the offset.

16. Dr. Su felt that the horizontal cup limits her abduction. He felt that an isolated cup revision could lead to another surgery if the femoral head should fail, but that she was also "extremely young" for a total hip replacement.

17. On May 30, 2008, Dr. Su spoke with Ms. Rachmil-Etter about the CT he had ordered. It showed 30 degrees of anteversion on the socket side with protrusio. The cup was deep causing bony impingement. His only offer was conversion to a total hip replacement, which was eventually performed at the Hospital for Special Surgery in New York in 2010.

## COUNT I
### NEGLIGENCE
**Sheryl Rachmil-Etter v. Daniel Snyder, M.D.**

18. Paragraphs 1 through 18 are incorporated by reference as if set forth fully herein.

19. On or about April 19, 2007 and thereafter, the Defendant, Daniel Snyder, M.D., for valuable consideration, undertook to treat and care for Plaintiff Sheryl Rachmil-Etter.

20. It then and there became the duty of Defendant, Daniel Snyder, M.D. to exercise that degree of care, diligence, and skill as is exercised by an average physician holding himself out in the field at the time in question.

21. Nevertheless, Defendant Daniel Snyder, M.D. breached his duty and failed to exercise said degree of care, diligence and skill by negligently performing surgery on his patient on August 17, 2007 and otherwise, recommending treatment for, supervising the care of, and by otherwise failing to render proper, adequate and necessary medical care and treatment of Plaintiff Sheryl Rachmil-Etter.

22. As a direct and proximate result of the Defendant's negligence as aforesaid, Plaintiff Sheryl Rachmil-Etter suffered severe and permanent injuries, endured and will in the future endure, great pain and suffering and mental anguish, has incurred and will in the future incur medical and other extraordinary expenses for her care and treatment, has and will in the future suffer a loss of earnings and earning capacity, and said Plaintiff was and otherwise is greatly injured.

WHEREFORE, Plaintiff Sheryl Rachmil-Etter, Individually, demands judgment against the Defendant Daniel Snyder, M.D. in such an amount as a jury may deem proper, plus interest and costs

**COUNT II**

**VICARIOUS LIABILITY**

**Sheryl Rachmil-Etter v. Newton-Wellesley Orthopedic**

Associates, Inc.

23. Paragraphs 1 through 22 are incorporated by reference as if set forth fully herein.

24. This is an action by the Plaintiff, Sheryl Rachmi-Etter, against the Defendant, Newton-Wellesley Orthopedic Associates, Inc. for the negligence of its agents, servants, employees or persons for whose conduct it was responsible, for the damages suffered by Mrs. Rachmil-Etter, including pain and suffering and emotional distress, loss of earning capacity and lost wages, past and future sustained by the Plaintiff as a result of the injuries caused by the negligence of the defendants.

WHEREFORE, Plaintiff Sheryl Rachmil-Etter, Individually, demands judgment against the Defendant Newton-Wellesley Orthopedic Associates, Inc. in such an amount as a jury may deem proper, plus interest and cost

### COUNT III
### LOSS OF CONSORTIUM
### Greg Etter v. Daniel Snyder, M.D.

25. Paragraphs 1 through 24 are incorporated by reference as if set forth fully herein.

26. This is an action by the Plaintiff Greg Etter, against the Defendant, Daniel Snyder, M.D. for negligence, for the emotional distress and loss of consortium he sustained and will continue to sustain as a result of Dr. Snyder's

negligent treatment of his wife, Mrs. Rachmil-Etter, and any physical harm caused by that emotional distress as a result of Dr. Snyder's negligence in the treatment of his wife

WHEREFORE, Plaintiff Greg Etter, Individually, demands judgment against the Defendant Daniel Snyder, M.D. in such an amount as a jury may deem proper, plus interest and cost.

### COUNT IV
### LOSS OF CONSORTIUM
### Greg Etter v. Newton-Wellesley Orthopedic Associates, Inc.

27. Paragraphs 1 through 26 are incorporated by reference as if set forth fully herein.

28. This is an action by the Plaintiff Greg Etter, against the Defendant, Newton-Wellesley Orthopedic Associates, Inc. for the negligence of its agents, servants, employees or persons for whose conduct it was responsible, for the emotional distress and loss of consortium he sustained and will continue to sustain as a result of the negligent treatment of his wife, Mrs. Rachmil-Etter, and any physical harm caused by that emotional distress as a result of the negligence in the treatment of his wife.

WHEREFORE, Plaintiff Greg Etter, Individually, demands judgment against the Defendant, Newton-Wellesley Orthopedic Associates, Inc., in such an amount as a jury may deem proper, plus interest and cost.

### JURY DEMAND

The plaintiffs demand a trial by jury.

The Plaintiffs,
By their Attorneys,

*(signature)*

Max Borten, M.D., J.D. BBO # 550115
Sidney Gorovitz, Esq. BBO # 204300
Barry Lang, M.D., J.D. BBO # 565438
Zachary B. Lang, J.D. BBO # 652055
Gorovitz & Borten, P.C.
400-1 Totten Pond Road
Waltham, MA 02451-2051
781) 890-9095
mborten@gbmedlaw.com


Dated: _____